UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARCUS AKIEM RICKETTS, :
:
      Petitioner, : Civ. No. 20-7430 (RBK)
:
v. :
:
DAVID E. ORTIZ, et al., : **OPINION**
:
      Respondent. :
:

**ROBERT B. KUGLER, U.S.D.J.**

    **I.**      **INTRODUCTION**

    Petitioner, Marcus Akiem Ricketts ("Petitioner" or "Ricketts"), is a federal prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges a disciplinary hearing finding which resulted in the loss of good conduct credits while he was incarcerated at F.C.I. Fort Dix in Fort Dix, New Jersey. For the following reasons, the habeas petition is denied.

    **II.**      **FACTUAL AND PROCEDURAL BACKGROUND**

    Petitioner is currently serving his federal criminal sentence at F.C.I. Williamsburg, in Salters, South Carolina. Petitioner though filed this habeas petition while he was incarcerated at F.C.I. Fort Dix and the events giving rise to this habeas petition also occurred at F.C.I. Fort Dix. Thus, this Court has subject matter jurisdiction over Petitioner's habeas petition. *See Almahdi v. United States*, No. 06-5408, 2007 WL 1129395, at *2 (D.N.J. Apr. 10, 2007) (citing *Spencer v. Kemna*, 523 U.S. 1 (1998)) (noting court had subject matter jurisdiction over § 2241 habeas petition challenging Federal Bureau of Prisons execution of a sentence where petitioner was incarcerated in New Jersey at the time he filed his habeas petition).

On May 18, 2020, Correctional Officer Scarfo submitted a memorandum indicating that he had discovered a cell phone while conducting a shakedown of a small bathroom in Petitioner's cell block. (*See* ECF 4-1 at 32). Scarfo indicating that the phone was unlocked and had an Instagram account with Petitioner "logged in." (*See id.*). Additionally, also on May 18, 2020, Lieutenant Atkinson drafted a memorandum which stated in part as follows:

> this investigator received an illegal cell phone that was discovered in Unit-A. While reviewing the contents of this rose gold color Samsung smart phone I clicked on the Instagram app and seen that the last person to log on was "jailhouse_miz". It was the social media page on the social media website Instagram of "jailhouse_miz" which is inmate Rickets, Marcus. . . . This Instagram account is private, and the contents cannot be viewed by those not following him on Instagram. Inmate Ricketts willingly took a selfie of himself sitting on a bottom bunk and used it as his profile pic on his Instagram page. Ricketts posted a black and white picture of himself wearing gray in color t-shirt, with black in color headphones around his neck. It is apparent by the background that this photo was taken within the secure confines of FCI Fort Dix in an inmate living quarters and is an unauthorized recreational photo. These findings were noted due to the bunk bed frame in the picture. Photos are only to be taken in the Visiting or Recreation area by Bureau approved cameras.

(*See id.* at 33). An incident report was also created on May 18, 2020 which similarly stated what Scarfo put in his memorandum. (*See id.* at 17). Petitioner received this incident report at 7:40 p.m on May 18, 2020. The report claimed that Petitioner violated Federal Bureau of Prisons' ("BOP") Disciplinary Code Section 108 – possession, manufacture, introduction or loss of a hazardous tool. (*See id.*). Petitioner responded to the incident report as follows: "[t]hat's not true. I do not have a cell phone and I was not on a cell phone, and I was not upstairs in the bathroom." (*See id.*). The matter was ultimately referred to a Discipline Hearing Officer ("DHO") for a disciplinary hearing. (*See id.*).

2

On May 19, 2020, the BOP apprised Petitioner of his rights for his upcoming DHO hearing. (*See id.* at 20). Petitioner declined to have a staff representative at the DHO hearing and declined to have witnesses testify. (*See id.* at 22).

Petitioner's DHO hearing took place on May 28, 2020. Petitioner provided the following statement at the hearing, "I didn't have a phone, I was downstairs playing chess. I was not on the phone." (*See id.* at 25). Ultimately, the DHO determined that Petitioner committed the prohibited act of possessing a hazardous tool. (*See id.* at 26). In making this determination, the DHO relied on Scarfo's statement, the Lieutenant's supporting memorandum, photographs depicting the cell phone and Petitioner's statement. (*See id.* at 26-27). The DHO imposed the following sanctions against Petitioner:

1. 41 days disallowance good conduct time;
2. 60 days forfeiture of non-vested good conduct time; and
3. 574 days loss of commissary privileges.

(*See id.* at 27). The DHO issued these findings on June 23, 2020. (*See id.* at 28). It was delivered to Petitioner on June 24, 2020. (*See id.* at 29). Petitioner was advised that he had twenty calendar days to appeal. (*See id.*). BOP records indicate that Petitioner did not file appeal.

Petitioner initiated this habeas action prior to the DHO issuing his June 23, 2020 findings by submitting a § 2241 habeas petition dated June 7, 2020. (*See* ECF 1). Petitioner first asserts that the Code 108 violation does not apply and was not proven. (*See id.* at 10). Second, Petitioner claims since May 18, 2020, he had been placed in the Special Housing Unit ("SHU"). (*See id.* at 11). He states that from the time he was placed in the SHU on May 18, 2020, until twenty days thereafter, his requests for administrative remedy forms had been denied. (*See id.*). He does

claim though that he submitted a BP-8 grievance form on May 30, 2020, but received no response. (*See id.*)

Next, Petitioner complains about his conditions of confinement while detained in the SHU. More specifically, Petitioner states he has not been issued shoes or been allowed to wear his own shoes such that it has affected his ability to recreate. (*See id.* at 13). He further states he has not been allowed to review his legal work or been provided with personal hygiene supplies. (*See id.*).

Petitioner seeks to have the "incident report" expunged and have all sanctions against him lifted. (*See id.*). He further seeks to be transferred back to "[his] room" and have his movement between BOP facilities reinstated. (*See id.*). He also seeks monetary damages from the warden. (*See id.*).

Respondent filed a brief in opposition to Petitioner's habeas petition. (*See* ECF 4). Respondent argues that this Court should dismiss Petitioner's habeas petition due to Petitioner's failure to exhaust administrative remedies and/or because it should be denied on the merits. (*See id.*). Petitioner then filed a reply brief in support of his habeas petition. (*See* ECF 5).

### III.    DISCUSSION

Section 2241 of Title 28 of the United States Code confers jurisdiction on district courts to issue a writ of habeas corpus in response to a petition from a prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). As noted *supra*, Part II, Respondent argues that Petitioner failed to exhaust administrative remedies and/or that his petition lacks merit. Each argument is considered in turn.

A. Exhaustion

"Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion is required because it "(1) allow[s] the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permit[s] agencies to grant the relief requested conserves judicial resources; and (3) provid[es] agencies the opportunity to correct their own errors fosters administrative autonomy." *Id.* at 761-62.

The BOP's administrative remedy system has several tiers allowing "an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). With respect to exhausting administrative remedies of a DHO's decision, a petitioner appeals the DHO's decision using a BP-10 form "to the Regional Director for the region where the inmate is currently located." 28 C.F.R. § 542.14(d)(2). "An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP–11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). "Appeal to the General Counsel is the final administrative appeal[ ]" for purposes of administratively exhausting a DHO decision. *Id.*

There is no dispute here that Petitioner failed to submit an appeal of the DHO's June 23, 2020 decision. Indeed, Petitioner filed this habeas petition even before the DHO issued his decision on June 23, 2020. Nevertheless, Petitioner asserts that any purported lack of exhaustion should be excused. More specifically, Petitioner claims from May 18, 2020, when he was placed in the SHU, for the next twenty days, he requested administrative grievance forms but was not

5

provided any. He does though state that on May 30, 2022, he filled out a BP-8 form[1] that was never responded to.

Administrative exhaustion can be excused if an attempt to obtain relief would be futile or where the purposes of exhaustion would not be served. *See Cerverizzo v. Yost*, 380 F. App'x 115, 116 (3d Cir. 2010) (citations omitted). A prison's failure to provide an inmate with requested grievance forms can also excuse an inmate's failure to exhaust administrative remedies. *See e.g., Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003); *Abraham v. Costello*, 816 F. Supp. 2d 430, 435 (D. Del. 2012).

Petitioner alludes to the prison's failure to provide him administrative grievance forms starting on May 18, 2020 when he was placed into the SHU. (*See* ECF 1 at 11). This includes Petitioner's statement that he specifically handed a request for a BP-10 form to the assistant warden on May 28, 2020. (*See id.*).

This Court will decline to decide this case on exhaustion grounds. Even if this Court were to conclude that Petitioner's lack of exhaustion should not be excused, in cases where a petitioner has failed to exhaust administrative remedies prior to filing a § 2241 petition, a court has discretion to either excuse the faulty exhaustion and reach the merits, or require the petition to exhaust administrative remedies before proceeding in court. *See Ridley v. Smith*, 179 F. App'x 109, 111 (3d Cir. 2006). This Court will use its discretion here to decide this case on the merits.

---

[1] A BP-8 form is colloquial known as an informal resolution form. *See Goodwin v. Hall*, No. 20-606, 2022 WL 2872256, at *5 (M.D. Pa. July 21, 2022) (citing 28 C.F.R. § 542.13(a)). If informal resolution is unsuccessful the inmate can present the issue to the warden for an administrative remedy using a BP-9 form. *See* 28 C.F.R. § 542.14. As noted *supra* though, petitioners appealing a DHO decision bypass the BP-9 form and appeal the DHO's decision directly to the Regional Director using the BP-10 form.

B. "Some Evidence"

As noted above, Petitioner argues at least in part that the BOP improperly revoked good conduct time when the DHO found him guilty of violating Code 108. Where a petitioner's good conduct time is revoked, federal due process rights may be implicated. The United States Court of Appeals for the Third Circuit has explained:

> Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct. *See* 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20 (2008). When such a statutorily created right exists, "a prisoner has a constitutionally protected liberty interest in good time credit." *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556-57, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)) . . . .
>
> [A] prisoner's interest in good time credits "entitle[s] him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Wolff*, 418 U.S. at 557, 94 S. Ct. 2963.

*Denny v. Schultz*, 708 F.3d 140, 143-44 (3d Cir. 2013) (footnote omitted). These minimum protections are "(1) advance written notice of the disciplinary charges; (2) an opportunity . . . to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67).

Moreover, the United States Supreme Court has explained that procedural due process concerns dictate that the disciplinary ruling be factually supported: "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prisoner disciplinary [officer] are supported by some evidence in the record." *Id.* (internal quotation marks and citation omitted). The standard is "minimal and does not require examination of the entire record, an independent assessment of the credibility of the witnesses, or

a weighing of the evidence." *Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013) (per curiam) (citing *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989)). Instead, "the relevant inquiry asks whether 'there is *any evidence* in the record that could support the conclusion reached by the disciplinary board.'" *Id.* (quoting *Hill*, 472 U.S. at 455-56) (emphasis added). Because "[r]evocation of good time credits is not comparable to a criminal conviction," the Supreme Court has explained, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Hill*, 472 U.S. at 456.

This Court finds that the DHO had "some evidence" to find Petitioner violated Code 108. The DHO relied upon facts recited in Scarfo's memorandum and the Lieutenant's supplemental memorandum discussed *supra*. Those facts related to the Instagram account and corresponding profile picture which connected Petitioner to the cell phone that was discovered in the bathroom.

The Third Circuit analyzed a relatively similar case in *Lloyd v. Shartle*, 514 F. App'x 77 (3d Cir. 2017). Like Petitioner, Lloyd was charged with a Code 108 violation – possession of a cell phone. In *Lloyd*, a correctional officer discovered an email address and password associated with one of Lloyd's monikers. *See id.* at 78. Officials subsequently discovered the email address had been used to create a Facebook account. *See id.* After reviewing the Facebook account, officials concluded Lloyd had been posting updates to the account from inside the prison using a cell phone. *See id.* Lloyd denied the charges at his disciplinary hearing. *See id.* He claimed his family set up the Facebook account and would update it after receiving instructions from him on a prison phone. *See id.* While no cell phone was discovered, Facebook posts, including photos which could only have been taken from a camera phone from inside the prison were found on the

Facebook account. *See id.* 78 & n.1. The DHO ultimately found that Petitioner committed a Code 108 violation. *See id.* In ultimately finding that the DHO's decision was supported by "some evidence," the Third Circuit noted the evidence that suggested Lloyd was updating his Facebook account from within the prison which included references to possessing a cell phone as well as pictures apparently taken from a camera phone from within the institution. *See id.* at 79-80.

In his reply brief, Petitioner cites to *Burns v. Hollingsworth*, No. 13-5485, 2014 WL 1117932 (D.N.J. Mar. 20, 2014) and *Briggs v. Quintana*, No. 13-330, 2014 WL 320591 (E.D. Ky. Jan. 29, 2014) to argue that courts have found "some evidence" when there is evidence that links a phone number found on a cell phone *only* to that petitioner. (*See* ECF 5 at 4). He claims though that all that is needed to locate his Instagram account is his name, and that his moniker, "jailhouse_miz" is easily recognizable by anyone in the building given it is painted on the back of his chair in the TV/computer room. (*See id.*). Petitioner further claims the profile photo referred to by the Lieutenant in his report was taken years ago. (*See* ECF 1 at 10). Thus, the DHO purportedly lacked "some evidence" because the Instagram account as it was discovered could not only be linked to him.

While the cell phone in this case was never found on Petitioner's person *per se*, it was found in a bathroom on Petitioner's cell block. The cell phone also contained social media related material which corresponded to Petitioner's moniker, including, as in *Lloyd*, photos (presumably from a camera phone) taken from within the institution according to the Lieutenant's supplemental memorandum provided to the DHO. Given the minimal "some evidence" standard, this Court finds that the DHO could have reasonably inferred that Petitioner possessed the cell phone.

9

C.  Grievance Forms

Petitioner next complains about his inability to obtain administrative remedy forms. This issue is most directly relevant to whether any purported lack of administrative exhaustion on Petitioner's part can be excused due to futility. However, given that, as described *supra*, Petitioner's claims are being denied on the merits, this claim does not warrant further review.

D.  Conditions of Confinement

Finally, Petitioner complains about the conditions of confinement while he was housed in the SHU. More specifically, he complains he was not provided shoes which prevented his ability to recreate, as well as a lack of hygiene products.  (*See* ECF 1 at 12). These types of conditions of confinement claims though are appropriately brought in a civil rights action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Narcotics*, 403 U.S. 388 (1971), not as a supplement to a habeas petition under 28 U.S.C. § 2241. *See Woodruff v. Williamson*, 362 F. App'x 263, 265-66 (3d Cir. 2010); *see also Leamer v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002) ("[W]henever the challenge ultimately attacks the 'core of habeas'—the validity of the continued conviction or the fact or length of the sentence—a challenge, however, denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition. Conversely, when the challenge is to a condition of confinement, such that a finding in plaintiff's failure would not alter his sentence or undo his conviction, [a civil rights action] is appropriate.").

It is worth noting, however, that in *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 324-25 (3d Cir. 2020), the Third Circuit noted that a district court has jurisdiction to issue a writ of habeas corpus on a petitioner's conditions of confinement claim in extraordinary circumstances. The petitioners in *Hope* were civil immigration detainees who challenged the constitutionality of their confinement due to the conditions they faced at their facility during the

10

early stages of the COVID-19 pandemic. Ultimately, the Third Circuit permitted those petitioners to challenge those conditions in habeas proceedings under § 2241, but declined to decide whether such a claim could be asserted by petitioners in less serious circumstances. *See Hope*, 972 F.3d at 324-25, 325 n.5.

Since *Hope*, courts have noted that "'a writ of habeas corpus is not a generally available remedy outside the immigrant detainee context contemplated by *Hope*, because an inmate's confinement cannot be 'unconstitutional' and therefore a basis for an order of temporary or permanent release unless all the prison personnel with supervisory authority over the inmate are proved to be risking the inmate's injury or death . . . by acts or omissions sufficiently harmful to evidence deliberate to serious medical needs,' *and* every alternative condition of confinement short of release is unavailable.'" *Harris v. Hudson Cnty. Dep't of Corr.*, No. 22-2755, 2022 WL 16631352, at *2 (D.N.J. Nov. 1, 2022) (emphasis in original) (citing *Houck v. Moser*, No. 20-255, 2021 WL 1840827, at *2 (W.D. Pa. May 7, 2021) (quoting *Estelle v. Gamble*, 429 U.S. 97, 1976)).

Petitioner's habeas petition does not meet the extraordinary circumstances threshold. First, Petitioner does not even seek release from custody in this habeas petition unlike *Hope*. Instead, as described *supra*, he seeks reinstatement of his good conduct time and monetary damages. Furthermore, unlike *Hope*, Petitioner does not allege that the conditions of confinement he is complaining about are ongoing. Indeed, Petitioner has been transferred from F.C.I. Fort Dix to another federal facility. Accordingly, this Court lacks habeas jurisdiction over Petitioner's conditions of confinement claims such that habeas relief is not warrant on those claims as well.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's habeas petition is denied. An appropriate order will be entered.

DATED:  April 10, 2023                                         s/ Robert B. Kugler
                                                               ROBERT B. KUGLER
                                                               United States District Judge